# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-01569-NYW

RYAN LEE,

      Plaintiff,

v.

TODD TUCKER,
MARK O'HAROLD,
AMANDA WEISS, and
CHAD WALKER,

      Defendants.

---

## MEMORANDUM OPINION AND ORDER

---

Magistrate Judge Nina Y. Wang

This matter comes before the court on Defendants Todd Tucker, Mark O'Harold, Amanda Weiss, and Chad Walker's (collectively, "Defendants") Motion for Summary Judgment (or "Motion"). [#16,[1] filed Mar. 23, 2017]. The undersigned Magistrate Judge considers the Motion for Summary Judgment pursuant to 28 U.S.C. § 636(c) and the Order Referring Case dated August 11, 2016 [#9]. Upon careful review of the Motion and associated briefing, the applicable case law, the entire case file, and the comments offered during the June 23, 2017 Motion Hearing, the court hereby **GRANTS IN PART and DENIES IN PART** the Motion for Summary Judgment for the reasons stated herein.

---

[1] Where the court refers to the filings made in Electronic Court Filing ("ECF") system in this action, it uses the convention [#___] and uses the page number as assigned by the ECF system, except when citing from the transcript of a deposition. When citing the transcript of deposition, the court uses the ECF docket number, but cites to the page and line numbers as assigned in the original transcript.

## BACKGROUND

Plaintiff Ryan Lee ("Plaintiff" or "Mr. Lee") initiated this action on June 21, 2016, seeking monetary damages from Defendants pursuant to 42 U.S.C. § 1983 for allegedly violating his constitutional rights. [#1]. Plaintiff's Complaint alleges the following claims: (1) Retaliatory Arrest against Defendants Tucker, O'Harold, and Weiss for allegedly arresting Plaintiff for exercising his First Amendment right to free speech (Claim I); and (2) Excessive Force and Failure to Intervene to Prevent Excessive Force[2] against all Defendants for allegedly using unreasonable and unnecessary force without legal justification when arresting Mr. Lee. *See* [*id.* at 7-10].

Pursuant to the court's Scheduling Order, Defendants filed their Motion for Summary Judgment [#16] on March 23, 2017. [#11]. On June 23, 2017, the court held a motion hearing on the Motion for Summary Judgment and took the Motion under advisement. *See* [#30]. The Motion is now ripe for resolution. *See* [#26; #29].

## MATERIAL FACTS

The events giving rise to Plaintiff' Complaint occurred on the night of July 4, 2014, when Defendants arrived at Plaintiff's residence in response to a 911 call placed by Plaintiff's wife Tamila Lee. [#16 at Statement of Undisputed Material Facts ("SOUMF") ¶ 1; #26 at Statement of Additional Disputed Facts ("SADF") ¶ 1]. Earlier that day, Mr. Lee attended a barbeque where he consumed approximately 4-5 alcoholic beverages. [#16 at SOUMF ¶¶ 1; #26 at SADF ¶ 1]. The Parties dispute whether Plaintiff was "overly intoxicated." *Compare* [#16 at SOUMF ¶¶ 1, 10; #29 at Response to Additional Facts ¶ 1] *with* [#26 at SADF ¶ 1]. Upon returning home

---

[2] Plaintiff alleges the Failure to Intervene to Prevent Excessive Force against Defendant Walker only. [#1 at ¶ 43].

from the barbeque, Plaintiff and Ms. Lee argued, and eventually "wrestled," over a set of car keys, because Ms. Lee was concerned that Plaintiff was too intoxicated to drive. [#16 at SOUMF ¶ 1; #26 at SADF ¶¶ 2-5]. The Parties dispute the severity and characterization of the altercation between Mr. and Ms. Lee, *compare* [#16 at SOUMF ¶¶ 1, 11] *with* [#26 at Response To Movants Statement Of Material Facts ("RMSMF") ¶ 1; *id.* at SADF ¶¶ 2-6]; regardless, it is undisputed that: (1) Ms. Lee blocked Mr. Lee from exiting their residence; (2) Ms. Lee attempted to grab the car keys from Plaintiff's hand and the two began to struggle over the keys; (3) Plaintiff and Ms. Lee fell to the ground and continued to struggle for possession of the car keys; (4) Plaintiff threw the car keys which then struck Ms. Lee's leg; and (5) both Plaintiff and Ms. Lee suffered minor injuries (e.g., cuts and abrasions) because of the altercation. *See* [#16 at SOUMF ¶¶ 1-3, 6; #26 at RMSMF ¶ 1 & SADF ¶¶ 2-6].

Ms. Lee then called 911. [#16 at SOUMF ¶ 1; #26 at RMSMF ¶ 1 & SADF ¶ 2]. During that call, Ms. Lee informed the 911operator that she did not know how much Plaintiff had to drink that day, that Plaintiff had thrown car keys at her, and that Plaintiff was "going to get on the phone and tell the operator that she (Tamila) [was] crazy." [#16 at SOUMF ¶ 2]. During the call, Ms. Lee also informed the 911 operator that she and Plaintiff had been fighting. [#16-1 at 1-2]. Plaintiff then took the phone from Ms. Lee and told the operator that there was "nothing going on;" that he had not consumed much more alcohol than Ms. Lee; that Ms. Lee hits and abuses him (including with weapons) and that he can show the officers proof of physical abuse; that he never threw the car keys at Ms. Lee; and that the officers will see that "somebody is crazy and somebody isn't." [*Id.* at SOUMF ¶ 3]. Plaintiff then stated, "Jesus Christ. F*ck. I'm

getting off the phone, bye." [*Id.*]. At that time, Plaintiff was aware that "police officers were either coming or already outside[.]" [*Id.* at SOUMF ¶ 4].

Defendants O'Harold and Tucker arrived at Plaintiff's residence first—both at some point heard yelling from inside Plaintiff's residence—and, upon knocking on Plaintiff's door, Ms. Lee answered and consented to their entry. *See* [#16 at SOUMF ¶¶ 5-6; #26 at SADF ¶ 7]. Defendant O'Harold informed Plaintiff that he was there to investigate a domestic disturbance complaint; Plaintiff, standing in the living room, said, "Get the f*ck out." [#16 at SOUMF ¶ 7]. Plaintiff also demanded to see a warrant authorizing their entry, to which either Defendant O'Harold or Tucker responded, "what are you some kind of lawyer or something." [#26 at SADF ¶ 9]; *cf.* [#29-2 at 81:3-15]. Mr. Lee replied, "no, but you don't look like a lawyer either, you look like a dumba**." [#26 at SADF ¶ 9].

Then, Defendants Walker and Weiss arrived at Plaintiff's residence and separated Plaintiff and Ms. Lee. *See* [#16 at SOUMF ¶ 8; #26 at RMSMF ¶ 8]. When questioned by Defendants Walker and Weiss, Ms. Lee stated that Plaintiff was intoxicated, had been arrested for driving under the influence in the past, had pinned her to the ground so she bit him, had shoved but not hit her,[3] that the two were arguing over the car keys, that the argument continued in the parking lot where the two continued to push one another, and that she cut her thumb and had bruises from the walls. [#16 at SOUMF ¶ 11]. Plaintiff, however, initially refused to answer Defendants O'Harold and Tucker's questions (including the cause of abrasions on Plaintiff's arm), apparently exercising his right to remain silent but, in doing so, Plaintiff employed "profane language;" however, Plaintiff eventually told Defendants O'Harold and Tucker that he

---

[3] Plaintiff denies that Ms. Lee told Defendants Walker and Weiss that Plaintiff pushed her to the ground. [#26 at RMSMF ¶ 11].

and Ms. Lee were arguing but that he "never laid a hand on her." *See* [*id.* at SOUMF ¶ 9; #26 at RMSMF ¶ 9 & SADF ¶¶ 10-11].

Following the respective interviews, Defendants O'Harold and Weiss convened outside the front door of Plaintiff's residence to discuss the information gleaned from Plaintiff and Ms. Lee. [#16 at SOUMF ¶ 12; #26 at SADF ¶ 12]. Mr. Lee remained in the living room with Defendant Tucker, and Ms. Lee remained in a bedroom with Defendant Walker. [#16 at SOUMF ¶ 12]. Defendants contend that Defendants O'Harold and Weiss concluded that they had probable cause to arrest Mr. Lee pursuant to Colo. Rev. Stat. § 18-6-803.6.[4] [*Id.*]. Plaintiff disagrees, contending that the conversation between Defendants O'Harold and Weiss was very brief and was interrupted by Defendant Tucker's yelling. *See* [#26 at RMSMF ¶ 12 & SADF ¶¶ 13-14, 20]. The interruption occurred because Plaintiff turned to Defendant Tucker and stated, "F*cking idiot," before arising from the couch and allegedly announcing his intention to get a glass of water from the kitchen. [#16 at SOUMF ¶ 13; #26 at RMSMF ¶¶ 13-14 & SADF ¶¶ 13-15]. The Parties also dispute whether: (1) Mr. Lee actually announced his intention to get a drink of water; (2) Mr. Lee was aware that he was being arrested or detained and could not move freely about his residence; or (3) upon arising from the couch, Defendant Tucker asked and/or ordered Plaintiff to stay seated and away from the kitchen due to a perceived risk of harm. *Compare* [#16 at SOUMF ¶ 14-15] *with* [#26 at RMSMF ¶¶ 13-14, 17 & SADF ¶¶ 15-17].

---

[4] Section 18-6-803.6(1) provides, in pertinent part, "[w]hen a peace officer determines that there is probable cause to believe that a crime or offense involving domestic violence, as defined in section 18-6-800.3(1), has been committed, the officer shall, without undue delay, arrest the person suspected of its commission . . . and charge the person with the appropriate crime or offense." Colo. Rev. Stat. § 18-6-803.6(1). There is no requirement to arrest either party involved should the peace officer(s) determine that no probable cause exists to believe a crime or offense of domestic violence has been committed. *Id.*; *but cf.* [#16 at 2].

Nonetheless, Plaintiff stated "something to the effect of 'its [sic] my house,' and/or 'I can go in my own kitchen," and continued in the direction of the kitchen.  *See generally* [#26 at SADF ¶ 19].

As Plaintiff continued toward the kitchen, Defendant Tucker attempted to detain Plaintiff, but was unsuccessful in doing so and a struggle ensued.  [#16 at SOUMF ¶ 15; #26 at RMSMF ¶ 15 & SADF ¶¶ 19, 21].   Defendants O'Harold and Weiss, upon hearing the confrontation between Defendant Tucker and Plaintiff, entered Plaintiff's residence and observed the struggle. [#16 at SOUMF ¶ 17; #26 at SADF ¶ 22].  At this point, Defendant O'Harold grabbed Plaintiff and applied an "arm bar hold" in an attempt to subdue Plaintiff, causing Mr. Lee to collide with his kitchen cabinets and refrigerator.  [#16 at SOUMF ¶ 17; #26 at SADF ¶¶ 23-24].   Then, Defendant Weiss entered the struggle, delivering two "hammer strikes" to Plaintiff's shoulder in an attempt to loosen his grip on the refrigerator; Defendant O'Harold also struck Plaintiff's neck with a "hammer strike."  [#16 at SOUMF ¶ 18; #26 at SADF ¶¶ 25-26].  *See also* [#16-4 at 1; #16-8 at 3].   Because Defendants O'Harold, Tucker, and Weiss could not subdue Plaintiff, Defendant Tucker drew his Taser and administered approximately 3-5 "drive stuns" to Plaintiff's back, lasting roughly 3, 5, and 8 seconds.[5]  [#16 at SOUMF ¶¶ 19-20; #26 at RMSMF ¶ 19 & SADF ¶¶ 27-28; #26-9].   During oral argument, counsel for Defendants conceded that "drive stuns" was not synonymous with Taser contacts; a single drive stun could include multiple contacts with Plaintiff's person.  At some point, Plaintiff lost consciousness and it is alleged that

---

[5] A drive (or "dry") stun means that the Taser's prongs were never developed; rather, the Taser would make an "electric arc that would stun when touched to the skin."  [#16 at SOUMF ¶ 19]. In addition, Plaintiff alleges that Douglas County "trains its officers to use the Taser for five-second durations. . . . [B]ut an officer may continue holding the trigger down for an extended, longer discharge."  [#26 at SADF ¶ 29].

Defendant Weiss twice informed Plaintiff that he was under arrest but nevertheless resisted. *Compare* [#16 at SOUMF ¶¶ 16-18, 20] *with* [#26 at RMSMF ¶¶ 17-20 & SADF ¶¶ 26-27, 34-35]. Defendant Walker allegedly observed the struggle but did not intervene. [#26 at SADF ¶ 31]. Ultimately, Defendant Weiss handcuffed Mr. Lee, and Defendants escorted Plaintiff to the rear seat of Defendant Weiss' squad car where Plaintiff stated Ms. Lee was "out of control and was 'being a c**t.'" [#16 at SOUMF ¶ 21].

Defendant O'Harold remained on the scene with Ms. Lee, who allegedly completed a Douglas County Sheriff's Office Domestic Violence Victim Statement Form, while Defendants Weiss and Walker transported Mr. Lee to Castle Rock Adventist Hospital (the "hospital") for jail clearance. *See* [#16 at SOUMF ¶¶ 22-23]; *but see* [#26 at RMSMF ¶ 22]. During his transport to the hospital, Plaintiff informed Defendants Weiss and Walker that his handcuffs were too tight but to no avail, and that if Defendant Tucker did not have a badge or a Taser Plaintiff "could have kicked his a**." [#16 at SOUMF ¶ 23; #26 at RMSMF ¶ 23 & SADF ¶ 36].

Once at the hospital, Dr. Britney Anderson examined Plaintiff. *See* [#16 at SOUMF ¶ 24]. Dr. Anderson's treatment notes indicate that Plaintiff complained only that his handcuffs were too tight; that he refused a breathalyzer; that he denied any trauma, rashes, or abrasions, muscle pain, joint pain, or swelling; that he had normal range of motion in his extremities; that he had three small abrasions on his back with no tenderness or underlying contusions and an abrasion on his arm, treated with Neosporin; and that he was medically cleared for incarceration. [#16 at SOUMF ¶ 24; #16-13]. Plaintiff avers that Dr. Anderson's medical notes do not accurately reflect his injuries, injuries that include "obvious physical injuries from the beating,

including pain and suffering, electric shock, bleeding, bruising, numbness in his wrist, and a torn rotator cuff." [#26 at RMSMF ¶ 24 & SADF ¶ 37].

Mr. Lee was then booked into the Douglas County Jail (the "jail") where he allegedly admitted to resisting arrest—Plaintiff denies he made this statement. *Compare* [#16 at SOUMF ¶ 25] *with* [#26 at RMSMF ¶ 25]. While in jail, medical personnel informed Plaintiff that his blood pressure was elevated. [#16 at SOUMF ¶ 26]. Accordingly, after his release on July 7, 2014, Plaintiff saw Dr. Shane Knepshield on five separate occasions. *See* [*id.* at SOUMF ¶¶ 26-32; #16-17; #16-18; #16-19; #16-20; #16-21]. On four of those occasions, Dr. Knepshield's treatment notes focus solely on Plaintiff's elevated blood pressure, *see* [#16-17; #16-18; #16-19; #16-20]; however, on August 22, 2014, Dr. Knepshield reported that Mr. Lee complained of persistent right shoulder pain, this being after Plaintiff met with attorneys regarding this matter. *See* [#16 at SOUMF ¶¶ 27-32; #16-21]. Plaintiff denies that he did not report his right should pain or any other injuries to Dr. Knepshield until the August 22, 2014 visit. [#26 at RMSMF ¶¶ 27-30]. Rather, Dr. Knepshield diagnosed the rotator cuff injury and referred Plaintiff to physical therapy, therapy that lasted several months and resulted in Plaintiff regaining only 90% of his right shoulder use. [#26 at RMSMF ¶ 27 & SADF ¶ 37].

Finally, on April 27, 2015, Plaintiff entered a guilty plea to charge of "Harassment-strike/shove/kick An Act of Domestic Violence" pursuant to Colo. Rev. Stat. § 18-9-111(1)(a) and received a deferred sentenced upon completion of 18 months of supervised probation that included completion of domestic violence and alcohol treatment. [#16 at SOUMF ¶ 33; #16-21; #26 at RMSMF ¶ 33]. Mr. Lee completed probation, the plea was withdrawn, and all charges were dropped. [#26 at RMSMF ¶ 33].

# STANDARD OF REVIEW

## I.      Rule 56 Generally

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986); *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party. *Anderson*, 477 U.S. at 248. "A 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014).

If the moving party demonstrates an absence of evidence supporting an essential element of the opposing party's claims, the burden shifts to the opposing party to show that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. To satisfy this burden, the nonmovant must point to specific facts in an affidavit, deposition, answers to interrogatories, admissions, or other similar admissible evidence demonstrating the need for a trial. *Id.*; *Mares v. ConAgra Poultry Co.*, 971 F.2d 492, 494 (10th Cir. 1992). "[A] mere 'scintilla' of evidence will be insufficient to defeat a properly supported motion for summary judgment; instead, the nonmoving party must

introduce some 'significant probative evidence tending to support the complaint.'" *Fazio v. City & County of San Francisco*, 125 F.3d 1328, 1331 (9th Cir. 1997) (quoting *Anderson,* 477 U.S. at 249, 252). In reviewing a motion for summary judgment the court views all evidence in the light most favorable to the non-moving party. *See Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

## II.      Qualified Immunity

The doctrine of qualified immunity applies to government officials in their individual, as opposed to official, capacity, and does not attach to government entities. *See Beedle v. Wilson*, 422 F.3d 1059, 1069 (10th Cir. 2005). Accordingly, the doctrine "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2015) (quoting *Pearson v. Callahan*, 555 U.S. 223 (2009)).

In § 1983 cases, when a defendant moves for summary judgment on the basis of qualified immunity, the plaintiff must do more than simply identify a genuine dispute of material fact. Once an individual defendant asserts qualified immunity, Mr. Lee must demonstrate that Defendants violated his constitutional rights and that those rights were clearly established. *See Cox v. Glanz*, 800 F.3d 1231, 1246 (10th Cir. 2015). And, "although we review the evidence in the light most favorable to the nonmoving party, the record must clearly demonstrate the plaintiff[s] ha[ve] satisfied [their] heavy two-part burden." *Felder ex rel. Smedley v. Malcom*, 755 F.3d 870, 877-78 (10th Cir. 2014) (internal quotations and citation omitted). Courts have discretion to consider either prong first. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that trial courts should exercise their sound discretion in deciding which of the two

prongs of the qualified immunity analysis should be addressed first); *Panagoulakos v. Yazzie*, 741 F.3d 1126, 1129 (10th Cir. 2013).

## ANALYSIS

### I.      Claim I – Retaliatory Arrest

To state a First Amendment retaliation claim, Plaintiff must allege "(1) he was engaged in constitutionally protected activity, (2) the government's actions caused him injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the government's actions were substantially motivated as a response to his constitutionally protected conduct."[6]    *Nielander v. Bd. of Cty. Comm'rs*, 582 F.3d 1155, 1165 (10th Cir. 2009). Defendants move for summary judgment on Claim I for two reasons.  First, Plaintiff cannot prove that his hurled insults at Defendants substantially motivated his arrest, because, at a minimum, probable cause existed to arrest Plaintiff and, therefore, his arrest was required by Colorado statute.  [#16 at 12, 13].  Second, even if Plaintiff could prove that retaliatory animus played some role in his arrest, Defendants are nevertheless entitled to qualified immunity because the "right to be free from retaliatory arrest that is otherwise supported by probable cause" was not clearly established at the time of his arrest.  [*Id.* at 12-13; #29 at 7].  The court examines both arguments, first considering whether such a violation is clearly established, and ultimately concluding that Defendants are entitled to summary judgment on Claim I.

---

[6] Because the Parties focuses their arguments on the third prong, the court assumes without deciding that Plaintiff engaged in constitutionally protected speech and that his arrest caused an injury that would chill a person of ordinary firmness from continuing to engage in that activity. Accordingly, the court focuses solely on whether a genuine issue of material fact exists as to whether retaliatory animus substantially motivated Plaintiff's arrest.  In passing, Defendants' Reply argues that Plaintiff was not engaged in constitutionally protected speech, [#29 at 8]; however, the court will not entertain this new argument raised for the first time in their Reply. *See In re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103, 1119 (10th Cir. 2015).

### A.    Clearly Established

"For a constitutional right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013) (internal quotations, brackets, and citation omitted).  Plaintiff may do so "by identifying an on-point Supreme Court or published Tenth Circuit decision; alternatively, 'the clearly established weight of authority from other courts must have found the law to be as the plaintiff[s] maintain[].'" *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015) (quoting *Weise v. Casper*, 593 F.3d 1163, 1167 (10th Cir. 2010)).  However, the Supreme Court has again reminded lower federal courts that "'clearly established law' should not be defined 'at a high level of generality.'"  *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 742 (2011)).

As mentioned, Defendants assert, "the Supreme Court has held that there is no national precedent clearly establishing a 'right to be free from retaliatory arrest that is otherwise supported by probable cause.'"  [#16 at 12-13 (quoting *Reichle v. Howards*, 566 U.S. 658 (2012)].  While true that the Supreme Court in *Reichle v. Howards* recognized that "[t]his Court has never held that there is such a right," and held that at the time of Mr. Howards' arrest in 2006 the United States Court of Appeals for the Tenth Circuit's ("Tenth Circuit") precedent did not clearly establish such a right, *see* 566 U.S. 658, 132 S. Ct. 2088, 2093-95 (2012), this court respectfully concludes that such a right *was* clearly established in 2014, the year of Plaintiff's arrest.

In *DeLoach v. Bevers*, the Tenth Circuit held that an arrest "taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when

taken for a different reason, would have been proper." 922 F.2d 618, 620 (10th Cir. 1990) (internal quotations and citations omitted). *DeLoach* implied that a plaintiff could pursue a retaliatory arrest claim notwithstanding the existence of probable cause. *Id.* The Tenth Circuit eventually extended this proposition to retaliatory prosecution claims. *See Poole v. Cty. of Otero*, 271 F.3d 955, 961-62 (10th Cir. 2001), *abrogated by Hartman v. Moore*, 547 U.S. 250 (2006). However, the Supreme Court cast doubt on the validity of *DeLoach* in 2006 when it held that the absence of probable cause is a necessary element of a *retaliatory prosecution* claim, because of the complex causal relationship inherent in such claims, i.e., the retaliatory animus is not between one person and that person's injurious conduct, but between one person and the injurious act of another—the prosecutor. *Hartman*, 547 U.S. at 259, 262.

Following *Hartman*, the Circuits were split as to whether *Hartman* applied equally to retaliatory arrest claims, i.e., whether the existence of probable cause was fatal to such a claim. *See, e.g.*, *Skoog v. Cnty. of Clackamas*, 469 F.3d 1221, 1231 & n.31 (9th Cir. 2006) (detailing the split among circuits). In 2011, the Tenth Circuit had occasion to reconsider *DeLoach's* prudence in the wake of *Hartman*. *See Howards v. McLaughlin*, 634 F.3d 1131, 1147-48 (10th Cir. 2011). In *Howards*, Mr. Howards alleged that the defendants (Secret Service Special Agents) unlawfully arrested him in violation of his Fourth and First Amendment rights after he publicly criticized and touched then Vice President Dick Chenney outside a shopping mall in Beaver Creek, Colorado. *Id.* at 1135-38. After concluding that the defendants were entitled to qualified immunity on Mr. Howards' Fourth Amendment claim given the existence of probable cause, the Tenth Circuit considered whether that probable cause was equally fatal to his First Amendment retaliatory arrest claim. *Id.* at 1145. The Tenth Circuit explicitly held that it declined to extend

*Hartman* to retaliatory arrest claims, noting the "care the Supreme Court took to distinguish between [the causal relationships in] complex [retaliatory prosecution claims] and ordinary retaliation claims." *Id.* at 1148. Accordingly, the Tenth Circuit denied the defendants qualified immunity and held that the law was clearly established that a plaintiff could maintain a retaliatory arrest claim notwithstanding the existence of probable cause. *Id.* (citing *DeLoach*, 922 F.2d at 620).

The Supreme Court disagreed with the Tenth Circuit's qualified immunity analysis. *See Reichle*, 132 S. Ct. at 2093-95. The Supreme Court held that, at the time of Mr. Howards' arrest in 2006, "it was not clearly established that an arrest supported by probable cause could violate the First Amendment." *Id.* at 2093. The Supreme Court first recognized that it had never recognized such a right. *Id.* at 2093-94. Next, the Court considered whether Tenth Circuit precedent clearly established such a right in light of *Hartman*. The Court held that *Hartman*, though considering only retaliatory prosecution claims, "injected uncertainty into the law governing retaliatory arrests, particularly in light of *Hartman's* rationale and the close relationship between retaliatory arrest and prosecution claims." *Id.* at 2096-97 (discussing the split among circuits as to whether *Hartman* applied to retaliatory arrest claims). Thus, the Court held that the defendants were entitled to qualified immunity because, at the time of Mr. Howards' 2006 arrest, it was not clearly established that an arrest supported by probable cause could violate the First Amendment. *Id.* at 2097.

Plaintiff argues that the Supreme Court overruled *Howards* only on the basis of qualified immunity, but did not overrule *Howards'* holding that a First Amendment retaliatory arrest claim is viable in spite of probable cause. [#26 at 27-28]. This court respectfully agrees that

Defendants' reading of *Reichle's* holding is too broad.  As analyzed by this court, the *Reichle*

decision does not stand for the proposition that the law as to retaliatory arrest within the Tenth

Circuit remains not clearly established to this day.  *See* [#16 at 12-13; #29 at 8].  Rather, the

*Reichle* Court held that the law was not clearly established as of 2006, in light of *Hartman*; thus,

the Tenth Circuit erred by relying on pre-*Hartman* precedent in concluding that the law was

clearly established.  In so ruling, the Supreme Court did not pass on the substantive issue as to

whether a claim for retaliatory arrest was viable in the face of probable cause to arrest.  As of

2011, it became clearly established in the Tenth Circuit that the existence of probable cause to

arrest does not preclude First Amendment retaliatory arrest claims.  *See Howards*, 634 F.3d at

1148-49; *see also Becker v. Bateman*, 709 F.3d 1019, 1023 (10th Cir. 2013) (explaining that for

the law to clearly established, "there must be a Supreme Court *or* Tenth Circuit decision on

point" (internal quotations and citation omitted)).  Therefore, because Mr. Lee's arrest occurred

in 2014, the court concludes that Defendants are not entitled to qualified immunity based on their

argument that it was not clearly established that Plaintiff could pursue a retaliatory arrest claim

notwithstanding the existence of probable cause.[7]

B.      **Retaliatory Animus**

Nevertheless, the court concludes that Claim I fails on the merits.  Specifically, Plaintiff

fails to create a genuine issue of material fact that his insults, directed at Defendants,

---

[7] This conclusion is consistent with the Tenth Circuit's holdings in post-*Howards* cases that all
pertain to pre-2011 arrests.  *See, e.g.*, *Mocek v. City of Albuquerque*, 813 F.3d 912, 930 (10th
Cir. 2015) (holding that, at the time of Mr. Mocek's arrest in 2009, the law was not clearly
established as to whether an arrest supported by probable cause could give rise to a First
Amendment retaliatory arrest claim); *Wilson v. Vill. of Los Lunas*, 572 F. App'x 635, 643 (10th
Cir. 2014) (same).  This court could not find a case within the Tenth Circuit considering the
viability of a retaliatory arrest claim after 2011.

substantially motivated his arrest.  *See Valencia v. De Luca*, 612 F. App'x 512, 520 (10th Cir.

2015).  Defendants argue that Plaintiff's hurled insults did not substantially motivate his arrest;

rather, Defendants arrested Plaintiff because of probable cause, and, once they determined

probable cause existed, they were required to arrest Mr. Lee under Colorado law.  [#16 at 12;

#29 at 8].  According to Defendants, Plaintiff "can produce no evidence that the [Defendants]

acted in retaliation for the exercise of First Amendment rights."  [#16 at 13]; *see also* [#29 at 8].

Though the existence of probable cause does not preclude the retaliatory arrest claim, *see*

*Howard*, 634 F.3d at 1148, this court respectfully agrees that Plaintiff fails to create a genuine

issue of fact as to whether the exercise of his First Amendment rights substantially motivated his

arrest.

Plaintiff argues that retaliatory animus should be inferred from the excessive force used

by Defendants when arresting him, because Plaintiff did not pose a threat to Defendants,

Defendants were thus "motivated to punish Mr. Lee for his colorful language and criticisms[.]"

*See* [#26 at 26-27].  It is undisputed that Plaintiff called Defendant Tucker a "dumba\*\*" and a

"f\*cking idiot."  But it is also undisputed that Plaintiff directed his profane language at various

Defendants from the very beginning of Defendants' arrival at his home and throughout the

evening.  *See generally* [#16-5 at 35:8-18, 35:23-25; #16-6 at 89:1-10; #16-7 at 39:1-40:23; #16-

9 at 1; #26 at SADF ¶ 9; #26-4 at 78:2-79:24, 91:1-5].  Other than Plaintiff's conclusory

allegation that Defendant Tucker's use of force "must have been motivated by an ulterior motive;

likely retaliation for Mr. Lee's vulgar—but protected—First Amendment criticisms," no

evidence suggests that any of the Defendants were substantially motivated to arrest Plaintiff

because of his constitutionally protected speech.  *Cf. Van Deelen v. Johnson*, 497 F.3d 1151,

1158 (10th Cir. 2007) (holding that a reasonable jury could infer an impermissible retaliatory motive from the named defendants' alleged statements of "Today you get pay back for suing us" and "Johnson and Miles are mad because you sued them"); *Worrell v. Henry*, 219 F.3d 1197, 1216 (10th Cir. 2000) ("As explained above, viewing the evidence in the light most favorable to Mr. Worrell, a trier of fact could conclude that Mr. Turner acted in retaliation for Mr. Worrell's truthful trial testimony when he advised Mr. Henry that he would not cooperate with the drug task force if Mr. Worrell was the coordinator.").

At oral argument (but not in his papers), counsel for Mr. Lee argued that the temporal proximity of the exercise of Mr. Lee's First Amendment rights to his arrest was sufficient to establish retaliatory motive. But Plaintiff could not point the court to, nor could the court independently find, a case that stood for the proposition that the temporal proximity alone, let alone temporal proximity in analogous circumstances of this case (i.e., Plaintiff's use of profane language over the entire course of his encounter with law enforcement officers), without more, was sufficient to establish that the exercise of First Amendment rights substantially motivated an arrest.[8] Plaintiff adduces no evidence that his language prompted Defendants O'Harold or Weiss to determine that there was probable cause to arrest him for committing a domestic violence offense. Nor does he present any evidence that the officers would have determined that there was no probable cause to arrest him or otherwise ignored their duty under Colorado law to arrest

---

[8] Otherwise, it would seem that every retaliatory arrest claim would survive to trial. The court leaves open the possibility that temporal proximity can establish retaliatory motive when there is a clear cause-and-effect nexus demonstrated by a § 1983 plaintiff. But in this case, when the profane statements were prevalent throughout Mr. Lee's encounter with law enforcement from the time of the 911 call to his eventual arrest, and were intermingled with other actions that were interpreted by such officers to be probable cause to believe that domestic violence had occurred, this court cannot conclude that the temporal proximity of Mr. Lee's statements to his arrest is sufficient to overcome summary judgment.

him once the probable cause determination was made, particularly in light of the unrefuted evidence that Ms. Lee had reported to the 911 operator and to the officers at the scene that she and Mr. Lee had been fighting.  [#16-1 at 1-2; #16-8 at 1-2].

Plaintiff argues that Defendants' purported excessive force reflected their retaliatory motive.  But this court is unpersuaded and finds that Plaintiff's argument conflates his two claims.  Defendants' use of force is more appropriately examined under his Fourth Amendment excessive force claim (Claim II), not under his First Amendment retaliatory arrest claim.  *See Cortez v. McCauley*, 478 F.3d 1108, 1125 (10th Cir. 2007) (noting, "*all* claims that law enforcement officers have used excessive force . . . in the course of an arrest . . . of a free citizen should be analyzed under the Fourth Amendment" (emphasis in original) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989))); *accord Price v. Elder*, 175 F. Supp. 3d 676, 679 (N.D. Miss. 2016) (holding that *Graham* precluded the plaintiff's First Amendment retaliatory arrest claim predicated on alleged excessive force) (collecting cases).

Once Defendants argued that Plaintiff could not establish his retaliatory arrest claim, it was incumbent upon Plaintiff to show that there was a genuine issue of material fact that Defendants arrested him in retaliation for his hurled insults.  *See Shimomura v. Carlson*, 17 F. Supp. 3d 1120, 1127 (D. Colo. 2014) ("To satisfy the third prong, [Plaintiff] must establish that but for the retaliatory motive his arrest would not have taken place." (internal quotations and citation omitted)).  Assumptions and inferences are not enough.  "At the summary judgment stage, some facts must demonstrate the defendants acted on the basis of a culpable subjective state of mind."  *Stonecipher v. Valles*, 759 F.3d 1134, 1148 (10th Cir. 2014) (internal quotations and citation omitted).  This court finds that Plaintiff fails to meet this burden.  *See* [#16 at 8].

Given the absence of evidence that suggests Defendants acted in retaliation for Plaintiff's profane language, Defendants Motion for Summary Judgment is **GRANTED** as to Claim I.

## II.    Claim II – Excessive Force and Failure to Prevent Use of Excessive Force

Courts evaluate excessive force claims arising during the events leading up to and including an arrest of a citizen previously at liberty under the Fourth Amendment's "relatively exacting 'objective reasonableness' standard." *Porro v. Barnes*, 624 F.3d 1322, 1325 (10th Cir. 2010) (citing *Graham*, 490 U.S. at 394-95). That is, the court considers whether the force Defendants used to arrest Mr. Lee exceeded "the force reasonably necessary to effect a *lawful* arrest or detention under the circumstances of the case," and whether Mr. Lee suffered more than a *de minimis* injury as a result of the excessive force. *Maresca v. Bernalillo Cty.*, 804 F.3d 1301, 1313, 1315 (10th Cir. 2015) (internal quotations and citation omitted) (emphasis in original). The inquiry does not focus on the arresting officer's underlying intent or motivation. *Graham*, 490 U.S. at 397. In addition, "a law enforcement official who fails to intervene to prevent another law enforcement official's use of excessive force may be liable under § 1983." *Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir.1996).

In determining whether the use of force is constitutionally impermissible, courts consider factors such as "'(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others,[9] and (3) whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Cavanaugh v. Woods Cross City*, 718 F.3d 1244, 1249 (10th Cir. 2013) (quoting *Graham*, 490 U.S. at 396). "Furthermore, a reasonable but

---

[9] Under this factor, courts sometimes consider whether the officer's own reckless or deliberate conduct during the arrest unreasonably created the need to use force. *See Medina v. Cram*, 252 F.3d 1124, 1132 (10th Cir. 2001).

mistaken belief that the suspect is likely to fight back justifies using more force than is actually needed." *Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1315 (10th Cir. 2009). But the court is mindful that at summary judgment, it is not the role of the court to make credibility determinations or to resolve questions of disputed fact.

Defendants move for summary judgment on Claim II for nearly identical reasons as Claim I: (1) Defendants' use of force was reasonable and not excessive; and (2) Defendants are entitled to qualified immunity because Plaintiff fails to establish that Defendants violated his Fourth Amendment rights or that the "use of a drive stun Taser on an intoxicated resistive domestic violence arrestee violates clearly established law[.]" [#16 at 13-21; #29 at 7-15]. The court considers these arguments below in the context of the two prongs of the qualified immunity defense. *See Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1314 (10th Cir. 2002) ("Because the reasonableness inquiry overlaps with the qualified immunity analysis, a qualified immunity defense is of less value when raised in defense of an excessive force claim." (internal quotations, brackets, and citation omitted)).

### A. Constitutional Violation

#### 1. The *Graham* Factors

Claim II alleges that Defendants Tucker, O'Harold, and Weiss employed unreasonable excessive force when arresting Plaintiff by "tackling him and repeatedly Tasering him, striking him with closed fists, and otherwise pushing, shoving, and slamming him into furniture and fixtures of the kitchen, both when he was conscious and unconscious." [#1 at ¶ 40]. Though the Parties enthusiastically dispute whether the force was excessive in light of the circumstances, it is undisputed that the force applied in this case includes:

- Defendant Tucker grabbing Mr. Lee as he entered the kitchen, knocking Mr. Lee into the counter, [#16-7 at 36:5-11, 40:13-18; #16-9 at 1; #26-3 at 15:12-20; #26-5 at ¶ 16];

- Defendant O'Harold, witnessing the struggle between Defendant Tucker and Plaintiff, entering the kitchen and rendering an unsuccessful "arm bar hold" on Plaintiff, pushing Plaintiff into the refrigerator, [#26-2 at 141:7-142:6, 143:17-144:4];

- Defendant O'Harold delivering two "hammer strikes" to Plaintiff's neck, [#16-4 at 1];

- Defendant Weiss delivering two "hammer strikes" to Plaintiff's upper left should blade, [#16-8];

- Defendant Tucker administering 3-5 "drive stuns" with a Taser to Plaintiff's back, [#16-9 at 2; #26-4 at 43:19-44:9; #26-9]; and

- Defendant Weiss tightly handcuffing Plaintiff, allegedly causing numbness in Plaintiff's hands, [#16-8 at 3; #16-13 at 1; #26-3 at 27:18-28:14].

Defendants argue that this use of force, under the circumstances, was reasonable and legally justified under the *Graham* factors. *See* [#16 at 13-14; #29 at 8-9]. According to Defendants, no constitutional violation occurred. *See* [#16 at 16]. Plaintiff vigorously disagrees. As other courts have noted, "[t]here is no clear-cut, 'easy-to-apply' legal test for whether an officer's use of force is excessive; instead, courts must 'slosh [their] way through the fact-bound morass of 'reasonableness.'" *White v. City & Cty. of Denver*, No. 13-CV-01761-CMA-MJW, 2015 WL 4748303, at *5 (D. Colo. Aug. 12, 2015) (citing *Cordova v. Aragon*, 569 F.3d 1183, 1188 (10th Cir. 2009)).

### a. Severity of the Crime At Issue

The court finds that this first factor weighs in favor of Plaintiff. While not diminishing the seriousness of domestic violence, it is undisputed that Defendants responded to a potential misdemeanor crime, and "the amount of force used should [be] reduced accordingly." *See Fogarty v. Gallegos*, 523 F.3d 1147, 1160 (10th Cir. 2008); *see also Koch v. City of Del City*, 660 F.3d 1228, 1247 (10th Cir. 2011) (holding that the first *Graham* factor weighed in favor of the plaintiff when the crime of obstruction was a misdemeanor under Oklahoma law).[10]

### b. Immediate Threat

Next, the court considers whether the undisputed facts establish that Plaintiff did or did not pose an immediate threat to Defendants. It is undisputed that Plaintiff insulted Defendants, particularly Defendant Tucker, and used profane language throughout his encounter with Defendants. Defendant Tucker testified that, while Plaintiff is a "big man," the two were separated by a couch, that Plaintiff made no threat to harm Defendant Tucker, and that Plaintiff never physically threatened him, but was verbally abusive. *See* [#26-4 at 40: 13-18, 78:22-79:6, 79:25-80:20]. Defendant O'Harold similarly testified that Mr. Lee made no physical threats against himself or the other Defendants. [#26-2 at 180:8-14].

However, Defendant Tucker also indicated that he perceived a safety risk when Plaintiff arose from the couch and proceeded towards the kitchen, despite Defendant Tucker's requests that Mr. Lee not enter the kitchen, given the presence of "numerous knives and objects on the kitchen counter that could be used as weapons." [#16-7 at 35:3-18; #16-9 at 1]. Yet, Plaintiff

---

[10] *But see Huntley v. City of Owasso*, 497 F. App'x 826, 830 (10th Cir. 2012) (unpublished) (holding that the first *Graham* factor weighed in favor of the officer defendants when faced with complaint of potential felonious domestic violence).

testified and attested that he informed Defendant Tucker he was simply going to get a glass of water, that he believed he could move freely throughout his home, and that he entered the kitchen on the side opposite to the block of knives. *See* [#26-2 at 9:6-14, 116:1-12; #26-3 at 15:12-15, 21:16-20, 22:3-25, #26-5 at ¶¶ 13-15]. Further, both Defendants Tucker and O'Harold testified that Mr. Lee was not detained at the time he walked towards the kitchen, that Defendant Tucker did not warn Mr. Lee to not go in the kitchen because of the knives, and that Mr. Lee made no attempt to grab a knife or move in the direction of the knives once the ensuing physical altercation began. *See* [#26-2 at 9:6-14, 22:18-21, 116:1-12, 180:2-7; #26-4 at 41:10-42:3, 138:16-25, 139:21-140:16].

It is true that an officer may use more force than necessary if she reasonably, albeit mistakenly, believes the suspect is likely to fight back, *see Thomson*, 584 F.3d at 1315, and, for this reason, the court does not conclude, as Plaintiff suggests, that Defendants' own reckless or deliberate conduct unreasonably created the need to use force. *See* [#26 at 23-24]. Nevertheless, the undisputed facts suggest that Mr. Lee did not physically threaten Defendants, carry or attempt to utilize a weapon, or make any overt movements towards Defendant Tucker while walking to the kitchen. *See Morris v. Noe*, 672 F.3d 1185, 1196 (10th Cir. 2012) (finding the second factor weighed heavily in the plaintiff's favor, because, other than being a large man and asking a potentially confrontational question, the plaintiff carried no weapon, made no overt threats, and did not get within the reach of the defendant officer). Based on these undisputed facts, this court finds that this second factor weighs in favor of Plaintiff.

### c. Active Resistance/Attempted Flight

Here, the court concludes that a genuine dispute of material fact exists as to whether Plaintiff actively resisted arrest. Defendants contend that Mr. Lee actively resisted arrest. *See* [#16 at 14-15]. Defendant Walker testified that he believed Defendant Weiss' use of force appeared appropriate under the circumstances, because Mr. Lee appeared to be actively resisting arrest. [#26-10 at 13:4-12]. Similarly, Defendants Weiss, Tucker, and O'Harold testified that Plaintiff passively resisted arrest by not placing his hands behind his back and continuing to move his body, despite being informed that he was under arrest. *See, e.g.*, [#26-2 at 39:1-13, 40:3-12, 141:5-19; #26-4 at 7:24-8:6, 9:2-8, 10:16-25; #16-6 at 12:7-13:21]. However, Defendants Tucker and O'Harold also testified that they did not witness or recall Mr. Lee punching, kicking, pushing, or shoving any of the Defendants during the melee, other than pushing against them while moving his legs to stand up. *See, e.g.*, [#26-2 at 22:22-23, 39:1-5; #26-4 at 7:24-8:10, 9:3-8]. The only warning given prior to the physical altercation was Defendant Tucker stating, "Don't go in the kitchen." [#26-4 at 35:10-14, 138:19-23 (testifying that the only warning given to Mr. Lee was "Don't go in the kitchen.")].

Conversely, Plaintiff testified that he never heard any Defendant state that he was under arrest, and that he was not attempting to resist arrest; rather, the events happened so quick that he did not have time to think or control his movements and instinctively grabbed the refrigerator to keep from hitting his head on the countertops. *See* [#26-3 at 15:16-16:7, 26:11-27:5; #26-5 at ¶¶ 16-19]. In addition, Plaintiff testified that, because of the unexpected use of force and the kitchen's tight corridors, he could not comply with Defendants' orders. *See* [#26-3 at 24:9-25:14, 25:19-26:18; #26-5 at ¶¶ 17-18].

"A court should look at the totality of the circumstances when assessing the reasonableness of the force used—the fact that a suspect was non-compliant or resisted arrest in isolation does not authorize the use of excessive force." *Bridges v. Yeager*, 352 F. App'x 255, 259 (10th Cir. 2009) (unpublished). It is undisputed that Mr. Lee did not place his hands behind his back until after Defendant Tucker Tasered him approximately 3-5 times, perhaps suggesting Mr. Lee was non-compliant and resisting arrest. *See* [#16-6 at 13:13-17; #16-8 at 3]. But the Parties vehemently dispute whether and when Defendants told Mr. Lee he was under arrest prior to the use of force, and how Mr. Lee complied with the officers' orders *Cf. Perea v. Baca*, 817 F.3d 1198, 1203 (10th Cir. 2016) (concluding that some use of force was warranted to get an arrestee under control who thrashed and swung a crucifix, but not repeatedly Tasering him without explanation). Indeed, Mr. Lee insists that he "never fought back or actively resisted the officers." *See generally* [#26 at 1]. The Parties have distinctly differing perspectives of the actions of both Mr. Lee and Defendants, and this court, at summary judgment, may not weigh how credible each of the Parties are, or which version of the circumstances is more accurate. Accordingly, this court concludes that these disputed facts are indeed material, and it is for the jury to decide whether Mr. Lee resisted and, if so, whether the force was reasonable under the circumstances.

### d. Injury

Defendants argue that Plaintiff's injuries were *de minimis* because Dr. Anderson described the abrasions caused by the Taser as "minor." [#16 at 16]. Further, that Plaintiff did not complain of any other injuries, besides the handcuffs being too tight, until after he met with attorneys regarding this matter. [*Id.* at SOUMF ¶¶ 24, 27-32]. However, Plaintiff alleged and

testified that he suffered physical pain from the altercation, namely: loss of consciousness, bruises and bleeding, numbness in the wrists, abrasions on his back, and a torn rotator cuff requiring months of physical therapy. *See* [#16-13; #16-21; #26 at SADF ¶ 37; #26-3 at 15:21-16:7, 57:1-17; 122:8-17; #26-6]. Based on the record before it, the court concludes that Plaintiff has proffered more than a *de minimis* injury resulting from the alleged actions leading up to his arrest, and, again, it will be up to a jury to determine whether such injury was caused by Defendants' use of force.

Based on the foregoing discussion, Plaintiff creates a triable issue of fact as to whether Defendants' use of force leading up to his arrest was objectively reasonable under the circumstances. Thus, Mr. Lee has met his burden on the first prong of Defendants Tucker, O'Harold, and Weiss' qualified immunity defense as to his excessive force claim. *See Morris*, 672 F.3d at 1198.

### 2. Handcuffing

In his Response, Plaintiff also separately alleges that Defendants used excessive force by handcuffing him too tightly and then ignoring his pleas to loosen them.[11] *See* [#26 at SADF ¶ 36; *id.* at 25]. "[U]nduly tight handcuffing can constitute excessive force where a plaintiff alleges some actual injury from the handcuffing and alleges that an officer ignored a plaintiff's timely complaints (or was otherwise made aware) that the handcuffs were too tight." *Fisher v. City of Las Cruces*, 584 F.3d 888, 897 (10th Cir. 2009) (internal quotations and citation omitted). Defendants argue that Plaintiff's alleged injuries from the tight handcuffs is *de minimis* and, thus,

---

[11] Plaintiff's Complaint makes only a fleeting reference to "numbness in his wrist," which could be construed as alleging that he suffered injuries from being handcuffed too tightly. [#1 at ¶ 32]. Nevertheless, because Defendants do not argue on Reply or at oral argument that Plaintiff failed to allege or somehow waived this allegation, the court substantively addresses it.

any handcuffing claim must fail as a matter of law.  *See* [#29 at 14].

Here, Plaintiff alleges that he informed Defendants Weiss and Walker that his handcuffs were too tight, but was ignored.  *See* [#26-3 at 16:12-17, 27:15-22; #26-5 at ¶ 20].  In addition, Plaintiff complained to Dr. Anderson at the hospital that his handcuffs were too tight causing pain.  [#16-13].  Plaintiff also alleges that he experienced numbness in his hands and wrists (paresthesias) for months after the arrest.  [#16-17; #16-21; #26-13].

However, the evidence submitted to corroborate Mr. Lee's injuries does not support an injury that is more than *de minimis*.  While Drs. Anderson and Knepshield reported that Plaintiff complained of numbness in his hands and wrists, *see* [#16-13; #16-17; #16-21], the pictures of Plaintiff's wrist show only small abrasions, and, although Dr. Knepshield referred Plaintiff to a neurologist at his request, Plaintiff does not submit any evidence that he saw the neurologist or that any neurological injury was detected.  The Tenth Circuit has held that such evidence "indicates on its face that [such] injuries were de minimis."  *Koch*, 660 F.3d at 1248.  Accordingly, to the extent Plaintiff alleges excessive force based on his handcuffing, Defendants are entitled to summary judgment on such a theory.  *See id.*

### 3.    Failure to Intervene

Defendant Walker may be liable under § 1983 if he failed to prevent another law enforcement officer from using excessive force.  *See Casey v. City of Fed. Heights*, 509 F.3d 1278, 1283 (10th Cir. 2007) (holding that Defendant-Officer Sweet had some responsibility to prevent the Tasering and beating of the plaintiff, because he should have known that this use of force was excessive.)  Defendants argue that, because no constitutional violation took place, Defendant Walker cannot be held liable for failing to intervene.  [#16 at 16-17; #29 at 13].

However, as discussed *supra*, the court concludes that a triable issue of fact exists as to whether Defendants' use of force was objectively reasonable.

Defendant Walker reported that he witnessed the altercation in the kitchen, that he saw Plaintiff holding the refrigerator door, that he heard Defendants Tucker, Weiss, and O'Harold clearly tell Plaintiff to stop resisting and that he was under arrest, and that he saw Defendant Tucker remove his Taser. [#16-15 at 2]. However, Defendant Walker later testified that he could not see much of the altercation, other than Defendant Weiss' back. [#26-10 at 13:8-12]. Defendant Walker also testified that he was responsible for training Defendant Weiss on the night in question, and that he believed her use of force was appropriate under the circumstances. [*Id.* at 11:19-12:4, 12:14-13:7]. Thus, it appears that Defendant Walker saw enough of the altercation to draw a conclusion regarding the appropriateness of at least one of the actor's force, in comparison to the circumstances at hand. Accordingly, the court concludes that a reasonable jury could find that Defendant Walker violated Plaintiff's Fourth Amendment rights by failing to intervene. *Mick*, 76 F.3d at 1136-37 (holding that the plaintiff created a triable issue of fact as to whether Defendant Redpath observed the physical altercation between the plaintiff and other officers and failed to intervene to prevent the alleged use of excessive force).

B.      **Clearly Established**

Having found that there is a genuine issue of material fact as to whether excessive force was used, the court now turns to whether Defendants are nonetheless entitled to qualified immunity because the constitutional right allegedly violated was not clearly established. Defendants argue that, even if a constitutional violation occurred, they are entitled to qualified immunity, because Plaintiff cannot demonstrate that the "use of a drive stun Taser on an

intoxicated resistive domestic violence arrestee violates clearly established law[.]"  [#16 at 13-21; #29 at 7-15].  While true that "clearly established law should not be defined at a high level of generality," *White*, 137 S. Ct. at 552 (interntal quotations and citation omitted), "the existence of excessive force is a fact-specific inquiry, [and] there will almost never be a previously published opinion involving exactly the same circumstances."  *Morris*, 672 F.3d at 1196 (internal quotations and citation omitted).  "The degree of specificity required from prior case law depends in part on the character of the challenged conduct.  The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation."  *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004).

### 1.    Defendants Tucker, O'Harold, and Weiss

In addressing the clearly established prong, the Parties focus explicitly on Defendant Tucker's Tasering of Plaintiff.  *Compare* [#16 at 19] *with* [#26 at 29-30].  The Tenth Circuit has recognized that the use of a Taser "in at least *some* circumstances" may be warranted and not excessive.  *See Porro*, 624 F.3d at 1329 (10th Cir. 2010) (collecting cases); *see also Hinton v. Elwood*, 997 F.2d 774, 781 (10th Cir. 1993) (suspect Tasered three times after he shoved and bit police officer).  Here, in concluding that there is a genuine issue of material fact as to whether the use of a Taser violated Mr. Lee's Fourth Amendment right to be free from excessive force, the court finds several cases from the Tenth Circuit instructive as to whether such right was clearly established as of 2014.

Most recently, the Tenth Circuit held that the defendant-officers' Tasering of an arrestee ten times in the span of two minutes constituted excessive force and violated the arrestee's

clearly established rights. *Perea*, 817 F.3d at 1204-05. The defendants originally responded to perform a welfare check on Jerry Perea (a mentally ill individual under the influence of drugs), but eventually stopped Mr. Perea after he pedaled his bicycle through a stop sign—a minor offense. *Id.* at 1202-03. The defendants then pushed Mr. Perea off his bicycle and repeatedly Tasered him without warning or explanation that he was under arrest. *Id.* at 1203. Though recognizing that some use of force may have been warranted to subdue Mr. Perea's thrashing and resistance, the Tenth Circuit held that it was clearly established that the use of disproportionate force to arrest an individual who is not suspected of committing a serious crime and who poses no threat to others constitutes excessive force; further, that the continued use of force on a subdued arrestee violated clearly established law. *Id.*

Likewise, in 2010, the Tenth Circuit held, "it was clearly established on December 8, 2006 that Officer Davis could not use his Taser on a nonviolent misdemeanant who did not pose a threat and was not resisting or evading arrest without first giving a warning." *Cavanaugh v. Woods Cross City*, 625 F.3d 661, 667 (10th Cir. 2010). In *Cavanaugh*, Officer Davis responded to Mr. Cavanaugh's 911 call wherein he informed the operator that his wife, Mrs. Cavanaugh, was drunk, looking for a fight, and had left their residence with a knife. *Id.* at 662-63. Officer Davis then encountered Mrs. Cavanaugh returning to her home, he yelled at her to not enter her residence, she failed to comply, and he Tasered her in the back causing her to seize and hit her head on a concrete step. *Id.* at 663-65. The Tenth Circuit held that Officer Davis' use of force was excessive given that he responded to a misdemeanor offense, that Mrs. Cavanaugh did not have the alleged knife in her possession, that she did not make any overt movements toward

Officer Davis, and that Officer Davis never warned Mrs. Cavanaugh that she was under arrest before Tasering her. *Id.* at 665.

In reaching its conclusion in *Cavanaugh*, the Tenth Circuit relied on its own precedent from 2007 when it held that the Tasering of an individual suspected of a nonviolent misdemeanor who posed no threat and was not resisting and/or fleeing, constituted a violation of clearly established constitutional law in 2003. *See Casey*, 509 F.3d at 1286. *Casey* presented a similar situation as *Cavanaugh*. Mr. Casey unintentionally exited the Federal Heights courthouse with a court file—a misdemeanor in Colorado. *Id.* at 1279. Upon returning to the courthouse, Officer Sweet confronted Mr. Casey but did not retrieve the file so Mr. Casey proceeded into the courthouse. *Id.* at 1280. Without warning, Officer Sweet grabbed Mr. Casey's arm and put him in an arm-lock; confused, Mr. Casey continued towards the courthouse so Officer Sweet tackled him but did not inform him he was under arrest nor advise him to stop resisting. *Id.* Officer Lor, witnessing the scrum, fired her Taser at Mr. Casey and dry stunned him while he was on the ground; Officer Losli also dry stunned Mr. Casey who was eventually subdued and charged with resisting arrest and obstructing a peace officer—both misdemeanors. *Id.*

While not factually identical, this case presents a factual scenario similar to those of *Perea*, *Cavanaugh*, and *Casey* sufficient for the court to conclude that the constitutional violation alleged by Mr. Lee was clearly established. First, Defendants arrived on the scene to investigate a misdemeanor offense. Second, it does not appear that Plaintiff posed an immediate threat to Defendants, despite his profane language. Third, though Defendant Tucker requested that Plaintiff not go in the kitchen, he did not inform Plaintiff he was under arrest before grabbing

Plaintiff. Finally, it is disputed whether Plaintiff was aware that he was under arrest after his altercation with Defendant Tucker commenced and whether he resisted such arrest, justifying the use of at least three Taserings to subdue Plaintiff. *Cf. Hinton*, 997 F.2d at 781 (holding that use of a stun gun was reasonable under circumstances because Mr. Hinton admitted that he was "actively and openly resisting" arrest). When viewing the facts in a light most favorable to Plaintiff, the court concludes that Defendants were "on notice" that their actions were unlawful under Tenth Circuit precedent. *See Cavanaugh*, 625 F.3d at 668. Thus, this court concludes that Defendants Tucker, O'Harold, and Weiss are not entitled to qualified immunity.

### 2. Defendant Walker

Similarly, Defendant Walker is not entitled to qualified immunity. As discussed, "a law enforcement official who fails to intervene to prevent another law enforcement official's use of excessive force may be liable under § 1983." *Casey*, 509 F.3d at 1283 (quoting *Mick*, 79 F.3d at 1136). Having allegedly witnessed the use of force exerted against Mr. Lee, yet failing to intervene, the court concludes that it was clearly established that failing to intervene to prevent excessive Tasering to effectuate an arrest for a misdemeanor amounted to a constitutional violation.

### CONCLUSION

Therefore, for the reasons set forth herein, **IT IS ORDERED** that:

(1)     Defendants' Motion for Summary Judgment [#16] is **GRANTED IN PART and DENIED IN PART**;

(2)     Summary Judgment is **GRANTED** in favor of Defendants and against Plaintiff as to Plaintiff's retaliatory arrest in violation of the First Amendment claim (Claim I), and Claim I is **DISMISSED with prejudice**;

(3)     Summary Judgment is **GRANTED IN PART** in favor of Defendants and against Plaintiff as to Plaintiff's excessive force in violation of the Fourth Amendment (Claim II) only to the extent it alleges a Fourth Amendment violation based on handcuffing; however, summary judgment is **DENIED IN PART** and Claim II **REMAINS** as to the excessive force claim against Defendants Tucker, O'Harold, and Weiss and the failure to intervene as to Defendant Walker; and

(4)     A Final Pretrial Conference is **SET** for July 21, 2017, at 3:00 p.m. in Courtroom C-204. The Proposed Pretrial Order is due by July 14, 2017.

DATED:  July 3, 2017                                    BY THE COURT:


                                                        s/ Nina Y. Wang
                                                        Nina Y. Wang
                                                        United States Magistrate Judge